UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MARIO D. ADAWAY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-00043-SRC |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

# **Memorandum and Order**

Mario Adaway moves the Court to vacate his sentence under 28 U.S.C. § 2255. *Adaway v. United States*, 1:26-cv-00043-SRC (E.D. Mo. Feb. 13, 2026), doc. 1 ("Civ. doc."). He alleges several errors in law enforcement's investigation of his criminal case, and one ineffective-assistance-of-counsel claim. *See generally* civ. doc. 1. Having carefully reviewed the full record, the Court finds that Adaway failed to demonstrate entitlement to relief or an evidentiary hearing. The Court therefore denies his motion. Civ. doc. 1.

## I. Factual background

Adaway's guilty-plea agreement describes the facts as follows:

> Prior to January 31, 2024, [Adaway] had prior felony convictions for deviate sexual assault and failure to register as a sex offender.
>
> On January 31, 2024, officers with the Kennett Police Department conducted a traffic stop of a silver Jeep Cherokee suspected to be involved in a series of robberies in Kennett. [Adaway] was the driver and sole occupant of the vehicle. Officers applied for a search warrant to search the Jeep. Inside, officers discovered a Smith & Wesson .22 caliber semi-automatic pistol, a box containing 73 rounds of .22 caliber ammunition, and various ID cards bearing the defendant's name. Post-Miranda, [Adaway] admitted that he knew he was a felon and that the Jeep and the .22 caliber firearm belonged to him.
>
> The Smith & Wesson .22 caliber semi-automatic pistol is a "firearm" under federal law. It was manufactured in Massachusetts, thereby necessarily traveling in

> interstate commerce before [Adaway's] possession of it on January 31, 2024, in Dunklin County, within the Southeastern Division of the Eastern District of Missouri.

Guilty Plea Agreement, *United States v. Adaway*, 1:24-cr-00042-SRC (E.D. Mo. July 19, 2024), doc. 21 at 3 ("Crim. doc.") (The Court cites to page numbers as assigned by CM/ECF.).

## II. Procedural background

### A. Criminal proceedings

In April 2024, a federal grand jury returned a one-count indictment for felon in possession of a firearm. Crim. doc. 1 at 1–2. Three months later:

> [I]n exchange for [Adaway's] voluntary plea of guilty to the charge contained in the Indictment, the United States agree[d] that no further federal prosecution will be brought in this District relative to [his] violations of federal law, known to the United States at [that] time, arising out of the events set forth in the Indictment.

Crim. doc. 21 at 1. Adaway admitted to knowingly violating 18 U.S.C. § 922(g)(1), admitted that a factual basis existed for his plea, and confirmed that he fully understood the elements of his crime—namely, that:

> (i) [Adaway] had been convicted of a crime punishable by imprisonment for a term exceeding one year;
>
> (ii) [Adaway], thereafter, knowingly possessed a firearm;
>
> (iii) At the time [Adaway] knowingly possessed a firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year; and
>
> (iv) The firearm was transported across a state line at some point during or before [Adaway's] possession of it.

*Id.* at 2.

In November 2024, the Court sentenced Adaway to 60 months of imprisonment followed by a three-year term of supervised release. Crim. doc. 33 at 1–3. Adaway appealed the judgment, crim. doc. 35, but then voluntarily dismissed his appeal, crim. doc. 47. Adaway is

currently serving his sentence at FCI Marion in Illinois with a projected release date of November 6, 2028. *See* Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 28, 2026).

**B. Civil proceedings**

In February 2026, Adaway filed a motion to vacate his sentence under 28 U.S.C. § 2255. Civ. doc. 1. A month later, the Court issued a case-management order. Civ. doc. 2. The United States timely filed its response, civ. doc. 5, and Adaway did not file a reply. Adaway's motion is therefore ripe for the Court's review.

**III. Standard**

**A. Section 2255**

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments). Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal. *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018). If a petitioner

failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief. *See id.*

Three exceptions to this general rule exist. First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002). Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice. *See Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992). This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims that could have been but were not raised on direct appeal." *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)).

Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental miscarriage of justice." *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)). This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw*

*v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). But a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)). Before addressing the merits of Adaway's motion, the Court addresses the United States' challenge to the timeliness of his motion.

## IV. Discussion

### A. Timeliness

The United States argues that Adaway's motion is untimely. Civ. doc. 5 at 6–7. For the following reasons, the Court disagrees. Section-2255 motions are subject to a one-year statute of limitations that runs from the latest of the following four dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). If a criminal defendant does not appeal a judgment, such judgment becomes "final" for purposes of section 2255(f)(1) when the time for filing a direct appeal expires. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008). But when, as here, a criminal defendant appeals a judgment, "the Supreme Court has defined finality as the

conclusion of the availability of direct review." *Lee v. United States*, 149 F.4th 981, 984 (8th Cir. 2025) (citing *Clay v. United States*, 537 U.S. 522, 527–28 (2003)).

In 2011, a district court noted that the Eighth Circuit hadn't addressed when a judgment becomes final after a criminal defendant voluntarily dismisses his appeal. *See Courtney v. United States*, No. 4:07-cr-00261-JLH, 2011 WL 906644, at *6 (E.D. Ark. Mar. 16, 2011). And the Court has not found Eighth Circuit precedent addressing the issue in the intervening time.

But the Court needn't decide the issue, because even if Adaway's conviction became final after he voluntarily dismissed his appeal, his motion is still timely. *See United States v. Sylvester*, 258 F. App'x 411, 412 (3d Cir. 2007) (stating that a conviction becomes final on the date when a defendant voluntarily dismisses his appeal); *but see United States v. Parker*, 416 F. App'x 132, 132 (3d Cir. 2011) (noting that a conviction may become final for a criminal defendant that voluntarily dismisses his appeal when his time to file a petition of certiorari ends). The Court entered judgment in this case on November 22, 2024. Crim. doc. 33. Adaway timely filed a notice of appeal. Crim. doc. 35. And the Eighth Circuit granted his voluntary motion to dismiss on April 4, 2025. Crim. doc. 47. Therefore, even if Adaway had only a year from when the Eighth Circuit granted his voluntary motion to dismiss, his filing deadline was April 4, 2026. Adaway filed his 2255 motion on February 11, 2026. Civ. doc. 1-2 at 1. The Court therefore finds that Adaway timely filed his section-2255 motion. The Court thus turns to address the merits.

**B. Law enforcement errors**

Adaway requests that the Court vacate his conviction for four reasons. First, Adaway states that he "was stop[p]ed (pulled over) on the above date of Jan. 2024, [b]etween [January] 30th and 31st." Civ. doc. 1 at 4; crim. doc. 21 at 3 (stating that the traffic stop occurred on

January 31, 2024). But, Adaway asserts, "[t]here was no probable cause to do so." Civ. doc. 1 at 4. "Officer's [sic] stated that [he] was doing 35 [miles per hour] in a 25 [mile-per-hour] zone, [b]ut [he] [r]eceived no citation." *Id.* Second, Adaway states the "[g]un . . . was found under the [h]ood compartment of a truck [he] owned, [b]ut [the] searched [sic] party was led there because [he] was investigated for some alleged [r]obber[ies] that [he] was not found guilty of." *Id.* at 5. He claims that "[n]o one [r]eported ever seeing me with a gun." *Id.* "So by the gun['s] not being involved in any crime," Adaway states that "[h]ow could [he] be charged." *Id.* Third, he claims that he "was targeted" by law enforcement, "so they [t]rumped up charges on [him], [t]o make something stick." *Id.* at 7. Finally, Adaway asserts that law enforcement "searched the [h]ouse that [he] live[s] in from top to bottom . . . . [but] the [a]llege[d] [r]obber[ies] gives [sic] [law enforcement] no grounds to be looking around for anything other than the [a]llege[d] crime[s] at hand (clues to a [r]obbery)!" *Id.* at 8.

The United States responds that "Adaway does not even attempt to couch his [claims] in terms of ineffective assistance of counsel or prosecutorial misconduct." Civ. doc. 5 at 4. The United States therefore argues that the Court "should dismiss Adaway's Motion as barred under the postconviction waiver in his plea agreement." *Id.* at 5. For the following reasons, the Court agrees.

"Generally, defendants may waive" collateral-attack "rights through plea agreements." *See United States v. Geraghty*, 572 F. App'x 456, 459 (8th Cir. 2014) (per curiam) (citing *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc)); *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000) ("As a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context."). To enforce a waiver, the Court must determine "that the issue falls within the scope

of the waiver and that both the plea agreement and the waiver were entered into knowingly and voluntarily." *Geraghty*, 572 F. App'x at 459 (quoting *United States v. McIntosh*, 492 F.3d 956, 959 (8th Cir. 2007)). If so, the Court must then "consider whether enforcement of the waiver will result in a miscarriage of justice." *Id.* (citing *McIntosh*, 492 F.3d at 959). The United States therefore "shoulders the burden to 'establish: (1) that the appeal is clearly and unambiguously within the scope of the waiver, (2) that the defendant entered into the waiver knowingly and voluntarily, and (3) that dismissing the appeal based on the defendant's waiver would not result in a miscarriage of justice.'" *Id.* (citation omitted).

As to the first element, the United States argues that Adaway's "claims fall within the scope of the appeal waiver in his Guilty-Plea Agreement." Civ. doc. 5 at 5. The Court agrees. Adaway agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." Crim. doc. 21 at 6. And as the United States correctly notes that "Adaway does not even attempt to allege the types of claims he reserved" in the waiver, such as prosecutorial-misconduct or ineffective-assistance-of-counsel claims. Civ. doc. 5 at 5; *see* civ. doc. 1 at 1–8.

Next, the United States argues that Adaway "entered the plea both knowingly and voluntarily." Civ. doc. 5 at 5. "As for whether the waiver was knowing and voluntary, [courts] consider whether [it] questioned the defendant about the defendant's decision to waive [collateral-attack] rights." *Geraghty*, 572 F. App'x at 460. Here, at Adaway's change-of-plea hearing, the Court confirmed that Adaway understood "all the terms of the plea agreement." Crim. doc. 42, Plea Hr'g Tr. at 10:24–11:1. The Court then proceeded to go through the terms of Adaway's agreement with him. *Id.* at 11:7–11:8. As relevant here, the Court reviewed the

elements of the charged offense with Adaway, confirmed that he understood the elements of the charged offense, and confirmed that he, in fact, did all of those things. *Id.* at 10:24–13:12; *see id.* at 15:9–15:11.

The Court then turned to address the waivers contained in Adaway's plea agreement. *Id.* at 15:12–15:14. The Court confirmed that Adaway understood that both he and the United States were waiving "all rights to appeal all non-jurisdictional, non-sentencing issues." *Id.* at 15:15–15:18. The Court also confirmed that Adaway understood that he was "waiving all rights to contest [his] conviction or any sentence in any post-conviction proceeding by writ of habeas corpus or otherwise except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id.* at 15:24–16:4.

And before the Court accepted Adaway's guilty plea, the Court asked Adaway if he needed to speak with his attorney. *Id.* at 23:24–23:25. Adaway responded, "[n]o." *Id.* at 24:1. The Court then asked how Adaway wished to plead, and Adaway responded, "[g]uilty." *Id.* at 24:2–24:4. The Court confirmed that Adaway understood all the questions that it asked him, and confirmed again that Adaway plead guilty because, he was, in fact, guilty as charged. *Id.* at 24:5–24:13. The Court therefore accepted Adaway's guilty plea. *Id.* at 24:14–25:23.

Having reviewed the entire record, the Court finds that Adaway knowingly and voluntarily entered into the plea agreement and its waiver. *See United States v. Caster*, 181 F.4th 887, 895 (8th Cir. 2026) (stating that "district court[s] can help ensure that a plea agreement and corresponding waiver are entered into knowingly and voluntarily [by] properly question[ing] a defendant about his or her decision to enter that agreement and waive the right to appeal.").

Finally, the United States argues that the waiver's enforcement "would not result in a miscarriage of justice." Civ. doc. 5 at 6. Courts "apply the 'narrow' 'miscarriage-of-justice

exception . . . in only limited contexts.'" *Caster*, 181 F.4th at 898. Those narrow circumstances include "challenges to an illegal sentence, to a sentence that violates the terms of an agreement, and where ineffective assistance of counsel rendered the . . . waiver itself unknowing and involuntary." *Id.* Here, the United States argues that "the sentence was within the statutory range of punishment, did not violate the terms of the plea agreement, and was not based on [] constitutionally impermissible factors." Civ. doc. 5 at 6. The Court agrees.

First, at Adaway's sentencing, the Court noted that the advisory guidelines range resulted in a "51 to 63 months' term of incarceration[.]" Crim. doc. 44, Sent'g Tr. at 19:2–19:5. The Court then sentenced Adaway within the guidelines—to an imprisonment term of 60 months. *Id.* at 22:12–23:13. Second, the Court "accept[ed] the parties' plea agreement . . . and [it] adopt[ed] the advisory guidelines calculations that are set forth in the presentence report." *Id.* at 18:22–18:24. Third, at both the change-of-plea hearing and at the sentencing hearing, Adaway confirmed that he was fully satisfied with his counsel's services. Crim doc. 42, Plea H'rg Tr. at 6:13–7:2; crim. doc. 44, Sent'g Tr. at 3:7–3:19. The Court therefore finds that the Court's enforcement of the waiver does not result in a miscarriage of justice. *See Caster*, 181 F.4th at 898.

### C. Ineffective assistance of appellate counsel

Next, Adaway, in the section of the standard 2255-form addressing timeliness, states that his "lawyer told [him] that [he] only had 14 days to [appeal] after [he] was sentenced." Civ. doc. 1 at 11. So, he filed an appeal. *Id.*; *see* crim. doc. 35. He also claims that his appellate counsel told him that "it was best [that] [he] let the appeal go, [be]cause if [he] did not, [Adaway] would make [his own] stay in county jail longer." Civ. doc. 1 at 11. He therefore claims that his

appellate counsel's alleged "[m]is-[i]nformation misguided [his] [judgment] of not following through with [h]is [d]irect appeal . . . which is '[i]neffective [a]ssistance of counsel.'" *Id.*

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a section 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception to the procedural-default rule exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both trial and appellate proceedings, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To establish ineffective assistance of counsel, a petitioner "faces a heavy burden." *DeRoo*, 223 F.3d at 925 (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). He must show both that his counsel's performance was deficient and that the deficient performance prejudiced the petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001).

The Court needn't decide whether the advice of Adaway's appellate counsel constituted ineffective assistance of counsel, because he has not met his burden to show prejudice. "Prejudice, within the meaning of *Strickland*, occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." *Zinzer v. Iowa*, 60 F.3d 1296, 1299 (8th Cir. 1995). Adaway has not met that "rigorous" standard. *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008).

In particular, Adaway has not shown that had he pursued his direct appeal, the result of the direct appeal would have been different. As discussed, Adaway knowingly and voluntarily

entered a guilty plea. *Supra* Part IV.B. And the Court sentenced Adaway within the guidelines. *Id.* And Adaway expressed his full satisfaction with his counsel's services during his plea and sentencing hearings. *Id.* The Court therefore finds that Adaway has not met his burden.

## V. Certificate of appealability

For the Court to issue a certificate of appealability, Adaway must make a substantial showing that he suffered the denial of a constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). A substantial showing means one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings. *Id.* But as shown in the discussion above, Adaway has not made such a showing. The Court therefore declines to issue a certificate of appealability in this case.

## VI. Conclusion

The Court finds that the record conclusively establishes that Adaway fails to show entitlement to relief or an evidentiary hearing under 28 U.S.C. § 2255. Accordingly, the Court denies Adaway's [1] Motion to Vacate, Set Aside, or Correct Sentence, and the Court declines to issue a certificate of appealability. A separate judgment accompanies this memorandum and order.

So ordered this 28th day of August 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE